UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | | |
|---|---|---|
| TERRY NICELY, | ) | |
|     Plaintiff | ) | CIVIL ACTION NO. 5:11-257 |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| EAST KENTUCKY POWER | ) | |
| COOPERATIVE, INC., | ) | |
|     Defendant | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the Defendant's Motion for Summary Judgment (DE 19). This case stems from the Defendant's termination of the Plaintiff, an at-will employee. The Plaintiff has asserted several claims, alleging interference and retaliation in violation of the Family Medical Leave Act, as well as discrimination and retaliation in violation of the Kentucky Civil Rights Act. The Defendant argues that the Plaintiff obtained all the leave she requested, and that the termination was justifiably based on the Plaintiff's threat to kill a co-worker. Because the Plaintiff fails to establish a prima facie case as to her claims, and because the Defendant articulates a legitimate, nondiscriminatory reason for its actions, summary judgment is granted to the Defendant.

## I. BACKGROUND

The Plaintiff, Terry Nicely, began working for the Defendant, East Kentucky Power Cooperative, Inc., as a janitor in 1992. (DE 19-3, Nicely Depo. at 12.) Nicely worked at East Kentucky Power's Dale Power Station in Ford, Kentucky. In 2003,

1

Nicely was diagnosed with fibromyalgia, a chronic disorder causing pain and fatigue.[1] (*Id.* at 19.) She continued to work following her diagnosis, but was absent many times between 2008 and 2010. East Kentucky Power never denied her requests for time off, but it did seek certification of her medical excuse for those absences in early 2008. (*Id.* at 55.) By August of 2008, Nicely had missed 27 days, and still had not provided a doctor's note. So once again, East Kentucky Power requested a medical excuse. (*Id.* at 50-51.) In response, Nicely provided a doctor's note, but the note only asked that she be excused from overhead work requiring lifting or pulling. (DE 19-3, Nicely Depo. at 50-51.) In July of 2010, East Kentucky Power gave Nicely a "Physician's Certification for Leave Under the Family Medical Leave Act" and asked that it be completed for a determination whether her absences qualified under the Act. (*Id.* at 65-66.) Nicely submitted a Certificate that stated she was not incapacitated but could be expected to miss one day per month due to her fibromyalgia. (DE 19-11.) On August 30, 2010, East Kentucky Power requested Nicely's doctor submit another Certificate because Nicely was missing more than one day per month. (DE 19-3, Nicely Depo. at 68-70.) The new Certificate again said Nicely was not then incapacitated and that she would need time off one day per month "or reoccurrence." (DE 19-12.) In her deposition, Nicely reasoned that her doctors could not provide her with a note excusing her many absences because fibromyalgia is a "day-to-day" and "ongoing thing." (DE 19-3, Nicely Depo. at 53.) Nicely also said that she could not estimate how many of her absences were actually due

---

[1] The Sixth Circuit has recognized the difficulty of diagnosing and evaluating disability claims based on fibromyalgia. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 244 (6th Cir. 2007); *see also* Amanda L. Van, *Intolerable Uncertainty: An Examination of the Inconsistent Treatment of Fibromyalgia Under the Americans with Disabilities Act*, 27 T. Jefferson L. Rev. 421 (2005).

to her fibromyalgia, rather than her other medical conditions or the needs of her family. (DE 19-3, Nicely Depo. at 59, 77.)

As a janitor, Nicely worked alongside employees of Star Building Service Company, an outside vendor East Kentucky Power had hired to provide custodial services. On September 2, 2010, Bill Smith, a Star employee, reported to his supervisor that he had heard Nicely threaten to kill another Star employee. Smith reported that the he encountered Nicely in a storage office and that Nicely had pointed to another Star employee, who was visible through the office door, and said, "I am getting ready to kill that bitch. She got me demoted." (DE 19-5, Smith Aff. ¶ 5.) On September 3, 2010, Star, in turn, reported the incident to East Kentucky Power, and Nicely's supervisor spoke with Smith the same day. (DE 19-4, Transcript of Bill Smith Interview; DE 20-21, Nicely Response Exhibits, E-mails.) Nicely was off work Friday, September 3 through Monday (Labor Day), September 6, 2010, so when she returned to work on September 7, 2010, Nicely was asked to meet with representatives of East Kentucky Power. (DE 19-3, Nicely Depo. at 85-87.) Initially, Nicely thought the meeting would be about her absences. (*Id.*). When questioned about the incident reported by Smith, Nicely said she did not know Smith and denied making the statements. (*Id.*) Faced with these questions, which she described as "rude," Nicely said she was angry in this meeting. (*Id.*) Also during this meeting, East Kentucky Human Relations representative Steve McClure asked Nicely if she knew any reason why Smith would report this statement if she had not said it. (DE 19-3, Nicely Depo. at 87:7-11.) Nicely said she had no idea. (*Id.*) East Kentucky Power suspended Nicely indefinitely without pay and then after meeting with her again on September 23, 2010, terminated her. She now brings four

3

claims against East Kentucky Power: (1) interference under the Family and Medical Leave Act, (2) retaliation under the Family and Medical Leave Act, (3) disability discrimination under the Kentucky Civil Rights Act, and (4) retaliation under the Kentucky Civil Rights Act.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant can satisfy its burden by demonstrating an absence of evidence to support the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). To survive summary judgment, the non-movant must come forward with evidence on which the jury could reasonably find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The non-movant must present more than a mere scintilla of evidence to defeat a motion for summary judgment. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-movant may not rest upon claims within its pleading, but must "go beyond the pleadings," *Celotex,* 477 U.S. at 324, and "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted) (internal quotation marks omitted). Summary judgment must be entered against a party failing to make an adequate showing to establish the existence of an essential element to that party's case, for which it bears the burden of proof at trial. *Celotex*, 477 U.S. at 322. When considering a motion for summary judgment, the Court must view all of the evidence in the light most favorable to the non-moving party. *See Matsushita*, 475 U.S. at 587.

### III. ANALYSIS

Nicely alleges interference and retaliation in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-2654. "The FMLA entitles qualifying employees to up to twelve weeks of unpaid leave each year if, among other things, an employee has a 'serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Walton v. Ford Motor Co.,* 424 F.3d 481, 485 (6th Cir. 2005) (quoting 29 U.S.C. § 2612(a)(1)(D)). An employer may not "interfere with, restrain, or deny the exercise of or attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1). However, "an employee who requests FMLA leave would have no greater protection against his or her employment being terminated for reasons not related to his or her FMLA request than he or she did before submitting that request." *Arban v. W. Pub. Corp.*, 345 F.3d 390, 401 (6th Cir. 2003) (quoting *Gunnell v. Utah Valley State Coll.,* 152 F.3d 1253, 1262 (10th Cir. 1998)).

In addition, Nicely alleges discrimination and retaliation in violation of the Kentucky Civil Rights Act ("KCRA"), KRS 344.010 *et seq*. Under the KCRA, it is unlawful for an employer "to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, ... because the person is a qualified individual with a disability." KRS 344.040(1); *see also Brohm v. JH Properties, Inc.,* 149 F.3d 517, 520 (6th Cir. 1998).

Each of Nicely's claims fail, because she cannot establish a prima facie case as to either of them. First, East Kentucky Power did not interfere with her use of FMLA leave. Second, Nicely did not suffer an adverse employment as a result of her fibromyalgia or its related absences during the time she was employed. Third, East Kentucky Power has

5

articulated a legitimate, non-discriminatory reason for Nicely's termination, and Nicely cannot show that the proffered reason is pretext.

### a. Count I: FMLA Interference

Nicely cannot maintain a claim for FMLA interference because East Kentucky Power never denied any of her requests for time off work in relation to her fibromyalgia. In *Seeger v. Cincinnati Bell Telephone Co., LLC*, the Sixth Circuit Court of Appeals addressed a similar situation and its analysis is instructive. 681 F.3d 274, 283 (6th Cir. 2012). In *Seeger*, the Sixth Circuit explained that interference claims require analyzing whether the employer provided its employee with the substantive rights granted by the FMLA. The plaintiff in *Seeger* received all the time off to which he was entitled under the FMLA. "Consequently, [the employer] did not shortchange his leave time, deny reinstatement, or otherwise interfere with his substantive FMLA rights." *Id.* The plaintiff in *Seeger* therefore could not maintain a claim for FMLA interference, and the Sixth Circuit confirmed the district court's ruling of summary judgment on that claim.

In her deposition, Nicely testified that she was never denied time off while working at East Kentucky Power. (DE 19-3, Nicely Depo. 71, 74-75.) Now, in her Response (DE 20) and newly-created affidavit (DE 20), Nicely contends that she requested but was not allowed to take days off from work in 2008, 2009, and 2010, and that she believes these requests would have been protected by the FMLA. (DE 20, Nicely Aff. ¶¶ 1, 2.) She points to a notice she received in July of 2010 as evidence that she was granted 51 days of leave from July 16, 2010, until October 8, 2010, but that instead, she was forced to work and attend meetings. (DE 1-7.) This documentation is a statement identifying the remaining FMLA leave available to her, and it was

6

accompanied by correspondence providing that "A Certification of Health Care Provider Form may be required for FMLA approval." (*Id.*) Also in response to Defendant's Motion for Summary Judgment, she now alleges that she was "informed" that she was in danger of losing her job as a result of her absences from work. This also contradicts her deposition testimony, during which Nicely testified that her supervisor had not threatened to fire her. (DE 19-3, Nicely Depo. at 99.) Nicely's affidavit, however, does not create a genuine issue of material fact. "When a motion for summary judgment has been filed, a party cannot create a factual issue by filing an affidavit which contradicts earlier testimony." *Lanier v. Bryant*, 332 F.3d 999, 1004 (6th Cir. 2003). *See also Davidson & Jones Dev. Co. v. Elmore Dev. Co., Inc.*, 921 F.2d 1343, 1352 (6th Cir. 1991) ("[I]t is 'accepted precedent' that after a motion for summary judgment has been filed, thereby testing the resisting party's evidence, a factual issue may not be created by filing an affidavit contradicting earlier deposition testimony." (internal citations omitted)). Because Nicely has admitted that East Kentucky Power never denied her time off, Nicely's FMLA interference claim fails.

    b. **Count II: FMLA Retaliation**

To establish a prima facie case of retaliation under the FMLA, Nicely must show that: (1) she was engaged in an activity protected by the FMLA; (2) East Kentucky Power knew that she was exercising her FMLA rights; (3) she suffered an adverse employment action; and (4) a causal connection existed between the protected FMLA activity and the adverse employment action. *Seeger*, 681 F.3d at 282. East Kentucky Power focuses on the failure of the third criterion, an adverse employment action.[2] Nicely only has alleged

---

[2] In support of the fourth criterion, Nicely relies on temporal proximity. Although her frequent absences began in 2008 and continued through 2010, Nicely points to the proximity between her termination and

one action that qualifies as an adverse employment action, her termination. In response, East Kentucky Power has articulated a legitimate non-discriminatory reason for her termination, and Nicely cannot show that the proffered reason is pretext for discrimination.

### 1. Nicely's Allegation of Retaliation Based on Her Termination

Nicely's claim is evaluated under the *McDonnell Douglas* burden-shifting analysis. *Seeger*, 681 F.3d at 285. Because East Kentucky Power has articulated a legitimate, non-discriminatory reason for Nicely's discharge – her death threat against a co-worker – the question is whether Nicely has produced adequate evidence to demonstrate the proffered reason was pretext for discrimination. *Id.* A reason is not pretext "unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515 (1993). "A plaintiff may establish pretext by showing that the employer's proffered reasons (1) have no basis in fact; (2) did not actually motivate the action; or (3) were insufficient to warrant the action." *Seeger*, 681 F.3d at 285. (citing *Dews v. A.B. Dick Co.,* 231 F.3d 1016, 1021 (6th Cir. 2000)).

Nicely contends that her co-worker Smith's report of the threat "has no basis in fact," but East Kentucky Power's "honest belief" in the report precludes her claim. Again, the Sixth Circuit's recent decision in *Seeger* is instructive. In that case, the Sixth Circuit applied the "honest belief rule" when affirming a district court's summary

---

comments and actions from her supervisors. Specifically, Nicely has noted the comment from her supervisor Kenny Carroll that "you know [East Kentucky Power] wants janitors off the books, don't you?" a week before the report from Smith. (DE 19-3 Nicely Depo at 92-97; DE 20-22 Nicely Letter to East Kentucky Power CEO, Sept. 14, 2010.) In addition, Nicely notes that on August 30, 2010, human resources representative Joe Smothers asked her for FMLA certification documentation from her physician. (*Id.*) Temporal proximity alone, however, cannot establish pretext. *Seeger*, 681 F.3d at 285.

judgment ruling on a plaintiff's FMLA retaliation claim. The plaintiff, Seeger, had been fired for disability fraud after a co-worker had reported seeing him attending Oktoberfest in downtown Cincinnati while Seeger was on FMLA leave for a herniated disc in his back. Seeger's employer investigated the report, found it at odds with Seeger's FMLA leave request (which declared that he was unable to sit or stand for more than 30 minutes at time), and fired him three weeks after he returned from his FMLA leave. Seeger challenged his termination by arguing that the reports of his actions at Oktoberfest were not true, were not inconsistent with his medical leave, and were not sufficient grounds for termination. Invoking the "honest belief rule," the Sixth Circuit explained that Seeger's arguments were "misdirected." *Seeger*, 681 F.3d at 286. "The ground rules for application of the honest belief rule are clear. A plaintiff is required to show 'more than a dispute over the facts upon which the discharge was based.'" *Id.* at 285 (quoting *Braithwaite v. Timken Co.*, 258 F.3d 488, 493-94 (6th Cir. 2001)).

Like Seeger, Nicely attacks the truthfulness of the report. Even if the report ultimately were found to be false, "the falsity of [a] [d]efendant's reason for terminating [a] plaintiff cannot establish pretext as a matter of law under the honest belief rule." *Id.* (internal citation and quotation marks omitted). Rather, if the employer held an honest belief in its proffered reason, the employee cannot establish pretext. *Id.* at 286. The "determinative question" is whether East Kentucky reasonably and honestly believed that Nicely made the threat. *Id.* East Kentucky made an investigation of the threat, during which it interviewed Smith and Nicely and obtained a sworn statement from Smith. (DE 19-5, Smith Aff.) An "optimal investigation" is not required of employers; instead, the "key inquiry is whether the employer made a reasonably informed and considered

9

decision before taking an adverse employment action." *Smith v. Chrysler Corp.,* 155 F.3d 799, 807 (6th Cir. 1998). Here, the record reflects that East Kentucky Power made a reasonably informed and considered decision. In her deposition, Nicely admitted that threatening an employee is "absolutely" a serious matter and grounds for termination. (DE 19-3, Nicely Depo. at 134:20-135:1.) She conceded that Smith relayed information to Kentucky Power and that she did not believe East Kentucky Power was behind what Smith said. (*Id.* at 142:13-15.) She further conceded that she had no basis for believing that East Kentucky Power knew Smith's report was not accurate. (*Id.* at 142:22-24.) Nicely merely contends Smith's report is not true. This is not enough, because "[a]n employee's bare assertion that the employer's proffered reason has no basis in fact is insufficient to call an employer's honest belief into question, and fails to create a genuine issue of material fact." *Seeger*, 681 F.3d at 285 (quoting *Joostberns v. United Parcel Services, Inc.*, 166 F. App'x 783, 791 (6th Cir. 2006)).

In support, Nicely now offers her theory that two other Star employees, Cheryl (a/k/a "Cheri") Thompson (the target of the threat) and her sister Debbie, conspired to have Smith file a false report in hopes that Nicely would be fired. (DE 19-3, Nicely Depo. at 103, 107-08.) Nicely's deposition was the first time she offered this theory. (*Id.* at 136.) During her meeting with its representatives on September 7, 2010, even when asked why Smith might lie, Nicely did not offer this theory to East Kentucky Power or suggest pre-existing animosity between Nicely and these Star employees. (DE 19-3, Nicely Depo. at 109.) Nicely also wrote a letter to Tony Campbell, CEO of East Kentucky Power, on September 14, 2010. (DE 19-7, Plaintiff's Letter to CEO.) In the letter, Nicely claimed her medical condition prompted the termination, but she does not

suggest Smith's report was the report of a conspiracy. (*Id.*)  Nicely has conceded that she has no proof of this alleged conspiracy beyond her belief.  (DE 19-3, Nicely Depo. at 108-09, 135-36).

At the same time, Nicely has suggested that East Kentucky Power should have refused to believe Smith's report based on her long tenure as an employee.  However, "the fact that [Nicely] was a reliable employee with a good employment record is not relevant, 'as it proves no more than that absent any misconduct on [Nicely's] part, [East Kentucky Power] was unlikely to terminate [her] employment." *Seeger*, 681 F.3d at 286 (quoting *McConnell v. Swifty Transp., Inc.,* 198 Fed. App'x. 438, 444 (6th Cir. 2006)). Nicely has attacked Smith's credibility by citing his criminal record, but she does not claim East Kentucky Power knew of his past offenses when investigating his report.  In this case, East Kentucky Power's honest belief remains reasonable.  East Kentucky Power relied on the particularized facts before it when making its determination to fire Nicely.  Nicely has presented no evidence to show East Kentucky Power's belief in Smith's report was not honestly held.  Therefore, Nicely's claim for a retaliatory discharge necessarily fails.

### 2.  Nicely's Other Allegations of Retaliation

Nicely's other allegations do not rise to the level of an "adverse employment action," and so she fails to make a prima facie case for retaliation during her employment with East Kentucky Power.  "An adverse employment action is a 'materially adverse change in the terms or conditions of ... employment because of [the] employer's conduct.'" *Policastro v. Northwest Airlines, Inc.,* 297 F.3d 535, 539 (6th Cir. 2002) (citation omitted).  "'A materially adverse change might be indicated by a termination of

11

employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.'" *Ford v. Gen. Motors Corp.,* 305 F.3d 545, 553 (6th Cir. 2002) (citation omitted). Nicely complains that in 2008, 2009, and 2010, she suffered retaliation and discrimination when she was required to explain her absences, when her performance evaluations noted her absenteeism, and when her supervisor suggested that, if her condition prevented her from working, she should consider filing for disability. Accepting these factual allegations as true, these acts are not adverse employment actions. Rather, an adverse employment action must be a "materially adverse change in the terms and conditions of [plaintiff's] employment." *Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir. 1999)(citation omitted). Nicely has provided no evidence that these actions had such effects.

Her supervisor's comment that she "should quit missing so much work" is not an adverse employment action, nor is a supervisor's request for Nicely to provide doctor's notes for future absences. Nicely has conceded that her supervisor's request for an explanation of absences was not unfair and acknowledged it was reasonable that management should want employees to be on the job. (DE 19-3, Nicely Depo. at 45, 75.) Nicely has provided only evidence of a mere inconvenience or annoyance, and an adverse employment action requires more. *Burlington N. & Santa Fe Ry. Co. ., v. White,* 548 U.S. 53, 68 (2006); see also *Cox-Frietch v. Ohio, Ohio Bureau of Worker's Comp.*, No. 1:10-CV-323-HJW, 2012 WL 508977, *7 (S.D. Ohio Feb. 15, 2012)(holding that a request for a doctor's note explaining FMLA absence was not an adverse employment action).

Nicely's evaluations referencing her absenteeism also are not adverse employment actions. *See, e.g., Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 322 (6th Cir. 2007) ("[A] negative performance evaluation does not constitute an adverse employment action, unless the evaluation has an adverse impact on an employee's wages or salary.") She cannot show that she ever failed to get a raise as a result of her absenteeism or the related comments in her evaluations, and when asked about the evaluations' effect on her salary, she could not remember. (Nicely Depo. at 72.)

The supervisor's suggestion that Nicely consider filing for disability is not an adverse employment action. Discussions about filing for disability are not adverse employment actions because they "did not cause any change to [p]laintiff's working conditions." *Pozsgazi v. Ravenna City Schools Bd. of Educ.*, 2012 WL 1110013, *7 (N.D. Ohio 2012). Nicely has put forth no evidence that her workplace conditions changed based on that discussion.

Lastly, Nicely alleges that she lost work duties and supervisory responsibilities in 2010. (DE 1, Complaint at ¶ 92.) Nicely, however, admitted that she never had a formal position or title in relation to the employees from the outside contractor, Star, but that she was simply a "janitor." (DE 19-3, Nicely Depo. at 103-107.) Instead, she had believed she was "over" these Star employees until East Kentucky Power informed her that she was to stay away from those employees and communicate work requests regarding Star employees through her immediate supervisor at East Kentucky Power. (*Id.* at 83-84, 104-107.) She acknowledged that she did not have the ability to discipline the Star employees or set their schedules. (*Id.* at 83.) Nicely has no evidence beyond her allegations and beliefs to support her claim that she had, and then lost, unofficial

13

supervisory responsibilities. This is insufficient to establish her claim. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir. 1992).

Having no evidence of an adverse employment action during time at East Kentucky Power beyond her termination, and having been unable to show East Kentucky Power's reason for termination was pretext, Nicely cannot maintain a claim for FMLA retaliation.

### c. Counts III-IV: Claims Under the Kentucky Civil Rights Act

Like Nicely's claims under the FMLA, her discrimination (Count III) and retaliation (Count IV) claims under the KCRA similarly fail.

"In order to establish a prima facie case of discrimination based on a disability, the plaintiff must show: (1) that [she] had a disability as that term is used under the statute (i.e., the Kentucky Civil Rights Act in this case); (2) that [she] was "otherwise qualified" to perform the requirements of the job, with or without reasonable accommodation; and (3) that [she] suffered an adverse employment decision because of the disability." *Hallahan v. The Courier-Journal*, 138 S.W.3d 699, 706-07 (Ky. Ct. App. 2004). Because the text of the KCRA mirrors that of the Americans with Disabilities Act ("ADA"), "claims brought under the KCRA are interpreted consistently with the standards developed under the ADA." *Bryson v. Regis Corp.*, 498 F.3d 561, 574 (6th Cir. 2007)(citing *Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 190-91 (2002) (stating that the KCRA "is construed consistently with the ADA"). As discussed above, Nicely cannot show she suffered an adverse employment action, and therefore, she cannot make a prima facie case for disability discrimination under the KCRA. Accordingly, this claim fails.

Like claims for disability discrimination under the KCRA, claims for retaliation under KRS 344.280 are analyzed under the standards developed under federal law. *See Brooks v. Lexington-Fayette Urban Co. Housing Authority,* 132 S.W.3d 790, 803 (Ky. 2004). To make out a claim of retaliation, a plaintiff must show that: (1) she engaged in a protected activity; (2) this exercise of protected rights was known to the defendant; (3) the defendant thereafter took adverse employment action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. *Scott v. Metropolitan Health Corp.,* 234 Fed. App'x. 341, 346 (6th Cir. 2007); *Morris v. Oldham County Fiscal Court,* 201 F.3d 784, 792 (6th Cir. 2000). As with Nicely's FMLA claim, the *McDonnell Douglas* analysis applies. Once East Kentucky Power articulates a legitimate, non-discriminatory reason for its action, Nicely must demonstrate that the employer's reason is pretext for discrimination. *Blair v. Henry Filters, Inc.,* 505 F.3d 517, 524 (6th Cir. 2007). As discussed above, East Kentucky Power has put forth a legitimate, nondiscriminatory reason for terminating Nicely: her threat to kill a co-worker. Nicely cannot demonstrate that this is pretext; the record shows East Kentucky Power had an honest belief in its reason for termination. Therefore, like Nicely's FMLA retaliation claim, this claim for retaliation under the KCRA fails.

IV. CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

(1) Defendant's Motion for Summary Judgment (DE 19) is GRANTED; and

(2) This matter is stricken from the Court's active docket.

Dated this 11th day of January, 2013.



Signed By:
*Karen K. Caldwell*
United States District Judge